STATE OF IOWA, appellee, v. FRANCIS LELAND HAGEN, appellant.

### No. 51838.

(Reported in 137 N.W.2d 895)

November 16, 1965.

James R. Hoyman, of Indianola, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, and Maynard Hayden, of Indianola, County Attorney, for appellee.

Mason, J.—Defendant was charged by indictment with larceny of domestic animals contrary to section 709.8, Code, 1962. Counsel was appointed for him at his request, and a plea of not guilty entered. Trial to jury resulted in a verdict of guilty. Motion for new trial was overruled and defendant was sentenced to imprisonment in the State Penitentiary at Fort Madison for not to exceed five years.

Defendant's appeal assigns eight separate errors which may be combined into four contentions. As they are considered they will be set forth in detail after a statement of facts.

In March 1964 pursuant to an agreement with James Brommel, defendant moved in and occupied a dwelling on a farm operated by James and Edward J. Brommel in Warren County. Defendant was to pay $20 a month rent which he could work out at $1.25 an hour. Livestock owned by James, Edward J. and their father, Edward B. Brommel, was kept on the farm for grazing. Defendant worked for the Brommels by feeding and caring for the livestock and performing other farm chores both

on this farm and on Edward B. Brommel's farm. No money changed hands between the parties. This arrangement lasted until approximately April 24.

On April 24 James Brommel noticed one of his father's cows standing near the fence close to the house bawling, her calf was missing. The following day while James and his father examined the area for the missing calf, they noticed a pool of blood in the grass. Both men went to defendant's house which was padlocked and the windows covered so they could not see in. Defendant was gone. When asked on direct examination what he did after checking the house, James testified his dad called the sheriff to get a search warrant to search the premises, the sheriff got in touch with the county attorney and they all came out and searched the house. When asked what he observed upon the premises, defendant's objection as to lack of foundation for any search of defendant's premises, urging admission of such testimony would be in violation of his rights under the Federal and State Constitutions, was sustained.

The sheriff called out of order testified Ed B. Brommel came to his office and made inquiry about getting immediate possession of the Hagen house. He was then asked if he knew that during the day a search warrant was obtained to search the premises previously occupied by defendant and in response answered "Yes." The sheriff was then asked, "Based upon that search warrant for the premises previously occupied by Mr. Hagen, did you in fact then search those premises?" He answered, "Yes, I did." The sheriff was then asked, "What did you find upon searching those premises?" Objection was again sustained.

Ed B. Brommel testified he observed the premises near defendant's residence, noticed the pool of blood previously testified to by James and observed the cow around the building bawling in the area where the blood was located. He then decided to see the sheriff, reported the missing calf and the pool of blood, brought the sheriff back to the farm, showed him the blood and returned with the sheriff to Indianola to see the justice of the peace about a search warrant which was subsequently issued.

After considerable difficulty and by using witnesses out of order several times, the State was ultimately successful in get-

ting its exhibit S-1A, the search warrant, into evidence over defendant's objection. The warrant was issued upon Edward B. Brommel's affidavit that he "has cause to suspect and believe * * * Hagen had taken and stolen a calf; and that said property or a part thereof is now concealed in the home of Hagen." The sheriff was permitted to testify in detail as to the evidence touching upon the search and resulting seizure of evidence from appellant's home.

After the introduction of exhibit S-1A, the State offered exhibits S-2 through S-8, photographs of the premises and contents of the house. All were received over defendant's objections.

The remaining exhibits S-9 through S-21, consisting of an axe, handsaw, cutting board, sharpening stone, knives, head of the calf, meat particles, etc., were received in evidence over defendant's objections.

On cross-examination the sheriff testified he served the warrant of arrest on defendant charging him with larceny of domestic animals at the Polk County jail on April 26 and that the Hagen house was locked and secured when he first observed it.

State called Dr. Joseph M. Brennan, a veterinarian, for the purpose of identifying exhibit S-16 as a part of a calf weighing 400 to 450 pounds killed in the last 24 to 48 hours.

At the close of the State's evidence, defendant moved for a directed verdict, stressing the State's failure to establish by competent evidence the necessary elements of the crime charged and contending the charge should have been embezzlement rather than larceny. The motion was overruled.

Defendant testified in his own behalf he had left the premises on April 23 and never returned because he was arrested in Des Moines the next afternoon and held in jail there until September 22, 1965. He explained the covering on the windows in the rented house, stated he did not know how the items disclosed by the search got into the house and described his activities on the farm taking care of the Brommel cattle and doing other chores.

In rebuttal the State offered evidence of the amount of work done by defendant on Brommel farms, the presence of defendant's automobile in the vicinity on April 23 and more details

concerning the initial arrangement with defendant for occupancy of the house.

Defendant contends there was nothing in the State's testimony which would indicate any entry had been made into defendant's home prior to issuance of a search warrant.

The following morning defendant requested permission to further cross-examine the State's witnesses, James and Ed B. Brommel and Sheriff Richardson. When the court inquired for what purpose, counsel stated it was for the purpose of delving into the affidavit of Ed B. Brommel in the search warrant proceedings and to determine what search of defendant's premises took place on the morning of the 25th.

The court allowed the examination but announced it would be out of the jury's presence and in chambers on the theory it went to a matter of procedure rather than to the main case. Counsel for defendant then announced he wished to correct his previous statement and that his cross-examination was not going to be directed to the validity of the search warrant but directed to a search made prior to the arrest and issuance of a warrant. The court then announced the matter would be heard in chambers and defendant's counsel might proceed to call witnesses for cross-examination.

The first witness, Ed B. Brommel, testified that on Saturday morning, April 25, he, James Brommel and the sheriff were present and they entered defendant's dwelling which was padlocked before the search warrant was issued, James Brommel gained entrance through an upstairs window which was locked with a snap, came downstairs, opened the door from the inside and let the sheriff and himself into the house where they found parts of what they believed to be beef; not every downstairs room was examined at that time.

Asked what he saw when he first entered the house, the witness testified they saw evidence of a calf that had been butchered, several pieces of fresh meat and things concerning a freshly butchered animal; the sheriff took no pictures on the first entry into the home and nothing was touched. "We just looked at what we seen and left."

They left James in charge of the premises. Ed and the sher-

iff went to Indianola to get a search warrant. Defendant was not present nor was he under arrest at that time other than in Des Moines on another charge.

It was after the first entry that Edward B. Brommel signed the affidavit and procured the search warrant; he gained the information for the purpose of making that affidavit from what he saw as the result of his first entry.

Defendant then moved to strike all evidence of Ed B. Brommel from the record and that the court admonish the jury not to consider it for the reason there was an illegal search and seizure of defendant's premises in violation of his constitutional rights and that exhibits S-2 through S-21, being fruits of such search and seizure, were inadmissible.

The court in commenting upon the motion stated the motion came after the State and defendant had rested and rebuttal evidence commenced for the State. The court stated, "The evidence was originally admitted because there was in evidence a search warrant regular on its face. The evidence that was admitted and is now attacked was evidence obtained by that search warrant which now shows that there was an entry into the home prior to the issuance of the search warrant * * *." The court felt the motion was not timely.

James Brommel testified he gained entrance into the home by climbing on the roof and breaking the latch on the window because every place was locked; he entered the house through the window, went downstairs, opened the door, his father and the sheriff came in the back door, he saw a big dishpan that had fat and looked like meat that had been cut out of an animal and as soon as we saw that, Sheriff Richardson says, " 'That's enough, * * * let's go' and we didn't touch anything. We just walked out." James further testified he was left in charge under directions from the sheriff. The sheriff and the witness's father later returned with the county attorney.

Defendant moved to strike all the testimony of this witness as well as any reference to any items secured from defendant's home and that the jury be admonished not to consider it for the reason it was apparent exhibits S-2 through S-21 were fruits of an illegal search and seizure. The court overruled the motion.

The sheriff was called and the same procedure was followed. He testified substantially as the two preceding witnesses, that to his knowledge no criminal charge had been filed in Warren County prior to the first entry into defendant's home and defendant was not present when they made the first entry. Defendant renewed his motion as to this witness and it was overruled.

At the close of all the evidence defendant renewed his motion for a directed verdict which was overruled.

Defendant and the State were both furnished a preliminary draft of the court's instructions, reserving the right of both parties to make exceptions or objections to the instructions before they were finally read to the jury.

Before reading the instructions to the jury, the court made inquiry of both parties as to objections or exceptions to the instructions, the State stating they had no objections and defendant reserving his objection according to law. Under section 787.3, subdivisions 5, 7, Code, 1962, defendant in a criminal case may reserve such right until his motion for new trial. This, of course, is a right that could be waived. State v. Post, 255 Iowa 573, 586, 123 N.W.2d 11, 19; State v. Hochmuth, 256 Iowa 442, 444, 127 N.W.2d 658, 659.

I. We combine appellant's first and eighth assignments of error as they relate to one contention. The testimony and other evidence touching upon what was observed and seized in searching appellant's home was inadmissible in that the search and seizure and the fruits thereof were illegal, and violated his constitutional rights.

The provisions of the Federal and State Constitutions relating to unreasonable search and seizure are identical in form.

"The first clause of the Fourth Amendment declares: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated.' It is general and forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent * * *." Go-Bart Importing Co. v. United States, 282 U. S. 344, 356, 357, 51 S. Ct. 153, 158, 75

L. Ed. 374, 382. They protect only against unreasonable search and seizure.

In Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, 84 A. L. R.2d 933, the Supreme Court specifically held that the constitutional prohibition forbidding the Federal Government to convict a man of crime by using testimony or papers obtained from him by unreasonable searches and seizures as defined in Amendment 4 is enforceable against the States through Amendment 14. "This means, * * * that the Fourth Amendment 'is enforceable against them [the states] by the same sanction of exclusion as is used against the Federal Government,' by the application of the same constitutional standard prohibiting 'unreasonable searches and seizures.'" Ker v. State of California, 374 U. S. 23, 30, 83A S. Ct. 1623, 1628, 10 L. Ed.2d 726, 736.

In general, the test to be applied in determining whether search and seizure is unreasonable is whether the thing done, in sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected. United States v. Haskins, D. C. E. D. Tenn., 1962, 213 F. Supp. 551; United States v. Cook, D. C. E. D. Tenn., 1962, 213 F. Supp. 568; Schwimmer v. United States, 8 Cir. (1956), 232 F.2d 855, certiorari denied 352 U. S. 833, 77 S. Ct. 48, 1 L. Ed.2d 52.

Applying this test to the foregoing facts, we find the search in question was initially made when James Brommel gained entrance into defendant's dwelling by use of a ladder to reach an upstairs window which was locked, forced the lock, entered the house through this window, came downstairs and opened the door from the inside to permit his father and sheriff to enter. They then looked around the house and made observation as to the remains of the dead animal. It was after this entry they decided to return to Indianola to get a search warrant. Armed with a search warrant they returned to defendant's premises, gathered the evidence later identified as exhibits S-2 through S-21.

Defendant was in jail in Des Moines so no suspect was flee-

ing or likely to take flight, the search was of a permanent premises, not of a movable vehicle, no evidence or contraband was threatened with removal or destruction and the search was not incident to a lawful arrest.

 A search is good or bad when it starts and does not change character from its success. The results obtained are not a factor to be considered in determining reasonableness of the search. United States v. Di Re, 332 U. S. 581, 595, 68 S. Ct. 222, 92 L. Ed. 210; Carlo v. United States, 2 Cir., 1961, 286 F.2d 841. The right of officers to thrust themselves into a house is a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance, when the right of privacy must yield to the right of search, is, as a rule, to be decided by judicial officer not by a sheriff or peace officer. Johnson v. United States, 333 U. S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436, 440.

 An unlawful search taints all evidence obtained at the search or through leads uncovered by the search. The fruit of the poisonous tree doctrine is to the effect that unlawful search taints not only evidence obtained by the search but facts discovered by process initiated by the unlawful act. United States v. Avila, Cal. (1963), 227 F. Supp. 3, 6; United States v. Paroutian, 2 Cir., 299 F.2d 486, 489.

We hold the initial entry into appellant's home was unreasonable and the search that followed was unlawful thus tainting all the evidence obtained after the search warrant was issued, and the admission of the articles seized and things observed constituted prejudicial error requiring a reversal. See in support of our holding Hair v. United States, 110 App. D. C. 153, 289 F.2d 894, 895, which holds that evidence seized under a warrant issued on basis of observations derived from an illegal entry is inadmissible and the evidence thereby observed is to be excluded.

 II. Appellant's second contention asserts the court erred in requiring cross-examination of the Brommels and sheriff to be conducted without the presence of the jury. This contention is without merit. The question before the court dealt with the admissibility of evidence. This was a matter solely for his

determination. Defendant in a criminal case has a constitutional right to have an independent determination by the court when the question of voluntariness is raised with respect to his purported confession. The question to be determined here was the validity of the search. The action of the trial court was proper.

III. In view of our determination in Division I that this case must be reversed and remanded for new trial, other assignment of errors have been considered and found to be without merit.—Reversed and remanded.

All JUSTICES concur.