STATE OF IOWA, appellee, v. CLIFFORD B. TAYLOR, appellant.

No. 51904.

(Reported in 144 N.W.2d 289)

JULY 14, 1966.

REHEARING DENIED MAY 1, 1967.

Robert G. Bridges, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett and Robert B. Scism, Assistant Attorneys General, Ray A. Fenton, Polk County Attorney, and James D. McKeon, Assistant County Attorney, for appellee.

LARSON, J.—On the 28th of January, 1965, the defendant, Clifford B. Taylor, was indicted by the Polk County Grand Jury, charged with corruptly influencing a public official, Billy McGee, a zoning inspector of the City of Des Moines, contrary to the provisions of section 739.11 of the 1962 Code of Iowa. When his demurrer was overruled, he entered a plea of not guilty, was tried, convicted and sentenced to imprisonment in the Polk County jail for a term of sixty (60) days. He appeals. We affirm.

Two principal questions are raised by this appeal: (1) Is a City of Des Moines zoning inspector an officer as contemplated in chapter 739 of the Iowa Code? (2) Did the trial court err in refusing to suppress evidence the inspector obtained on his second visit to defendant's home when no search warrant had been secured prior thereto?

The trial court ruled as a matter of law that the city zoning inspector was an official, and held the evidence of the conversation between these parties in the yard at defendant's home,

including the tape recording, was admissible and did not violate defendant's constitutional rights.

Section 739.11 of the 1962 Code of Iowa provides:

"If any person, directly or indirectly, give, offer, or promise, or conspire with others to give, offer, or promise to any officer contemplated in this chapter any valuable consideration, gratuity, service, or benefit whatever, with a view or for the purpose of corruptly influencing said officer's official acts or votes, such person shall be imprisoned in the penitentiary not exceeding two years, or in the county jail not exceeding one year, or be fined in any sum not exceeding three hundred nor less than twenty dollars."

Section 15-54.01 of the Municipal Code of Des Moines, introduced into evidence by defendant, provides:

"This is technical work in making inspections and investigations to enforce compliance with zoning laws.

"An employee in this class is responsible for inspecting buildings, structures, or land for conformance with provisions of municipal zoning ordinances and for investigating complaints and seeking evidence necessary to obtain convictions in cases of zoning violations. The employee works independently in the field but technical assistance is available from a superior who makes detailed assignments and reviews work through reports and observation of results obtained.

"Illustrative examples of work.

"Investigates complaints on zoning violations, obtains statements or depositions of witnesses, and seeks evidence necessary to obtain convictions in zoning violations.

"Reviews building plans for compliance with zoning laws.

"Inspects areas of the city for zoning violations, inspects construction to insure compliance with zoning ordinances and plans.

"Prepares reports and memoranda and conducts correspondence; issues notices to violators of zoning ordinances.

"Cooperates with other municipal departments and agencies in matters involving zoning enforcement.

"Advises the general public on zoning matters providing information as required to promote understanding and compliance with zoning laws.

"Performs related work as required.

"Desirable knowledge, abilities and skills.

"Considerable knowledge of the geography of Des Moines.

"Working knowledge of state and municipal zoning laws involving zoning administration and enforcement.

"Some knowledge of laws and ordinances governing municipal organization, administration and services.

"Working knowledge of the principles, practices and techniques of investigative work.

"Ability to observe situations analytically and objectively and to record and report them clearly and completely both verbally and in writing.

"Ability to contact the public, to establish and maintain effective working relationships, and to explain and enforce regulations firmly and courteously.

\* \* \*

"Minimum experience and training.

"Graduation from a standard high school; experience of a responsible nature in the enforcement of laws and regulations, in inspection and investigative work, or in municipal zoning work; or any equivalent combination of experience and training."

It is undisputed that Mr. McGee was a duly appointed and acting zoning inspector for the City of Des Moines on November 12, 1964, and that while on duty that forenoon he discovered an addition being made on defendant's home and apartment house on Kingman Boulevard. Mr. McGee testified during his investigation he met the defendant in the backyard and asked him if a permit to build had been secured. When it appeared he had none, the defendant offered the inspector $500 to "forget" about his discovery, but he refused and told defendant he would return. After a conference with law enforcement officers at City Hall, McGee did return, this time with a hidden tape recorder on his person. Further conversation about the zoning violation and defendant's offer followed and were tape-recorded by the

inspector. At that time defendant also gave Mr. McGee a check in the sum of $500, later introduced as State's Exhibit "A." The following day defendant was arrested and charged with violation of section 739.11 of the Code.

 I. It is somewhat difficult to define with accuracy the term "public officer" as distinguished from an "employee". It has been wisely said that, although an office is an employment, it does not follow that every employee is an officer. Clearly, McGee was a city employee. Was he also shown to be an officer? In the early case of State v. Spaulding, 102 Iowa 639, 72 N.W. 288, we fully considered this problem and set forth what we believed were the acceptable guidelines to be used in determining the status of one holding such a public position. We have never departed from them and they are applicable here. To summarize, five essential elements are required by most courts to make a public employment a public office. They are: (1) The position must be created by the Constitution or legislature or through authority conferred by the legislature. (2) A portion of the sovereign power of government must be delegated to that position. (3) The duties and powers must be defined, directly or impliedly, by the legislature or through legislative authority. (4) The duties must be performed independently and without control of a superior power other than the law. (5) The position must have some permanency and continuity, and not be only temporary and occasional. See Hutton v. State, 235 Iowa 52, 54, 55, 16 N.W.2d 18 (workmen's compensation case). Also see annotations, 53 A. L. R. 595, 93 A. L. R. 333, 140 A. L. R. 1076, 5 A. L. R.2d 416, 417.

While State v. Spaulding, supra, 102 Iowa 639, 72 N.W. 288, was criminal, the guidelines set out therein and the recitation of elements necessary to make a public employment a public office have been adopted in other fields of law. Hutton v. State, supra; McKinley v. Clarke County, 228 Iowa 1185, 1189, 1190, 293 N.W. 449 (workmen's compensation case); Heiliger v. City of Sheldon, 236 Iowa 146, 154, 18 N.W.2d 182 (workmen's compensation case); Francis v. Iowa Emp. Sec. Comm. 250 Iowa 1300, 1303, 98 N.W.2d 733 (retirement and pension case). It will be noted that, in determining the status of one holding a

public position, consideration is also given to such matters as the term of office, requirement of oath and bond, although these elements, we have said, are not deemed essential to a public office. Francis v. Iowa Emp. Sec. Comm., supra. With these rules and basic elements in mind, we turn to the showing here, for in the end it must be said each case turns upon its own circumstances. Hutton v. State, supra.

■ II. It is not disputed that the position of Des Moines zoning inspector was created by city ordinance under due authority conferred upon the city by the Iowa legislature. Chapter 414, Code of 1962; Des Moines Municipal Code, section 15-54.01; City of Des Moines v. Reiter, 251 Iowa 1206, 1210, 102 N.W.2d 363, and citations.

In this city ordinance, introduced into the record by defendant, the powers and duties of a zoning inspector are set out, detailed and explained. The ordinance prescribes that this inspector shall work "independently in the field", that he investigate complaints of zoning violations, that he seek evidence of violations to obtain convictions, that he review building plans to determine compliance with zoning laws, that he inspect areas of the city for violations, cooperate "with other municipal departments and agencies in matters involving zoning enforcement", and that he make reports, issue notices to violators, and advise the general public as to zoning law requirements. His power and duty are not subject to the will and direction of any superior officer or body. He acts on behalf of the public and, in doing so, exercises a portion of the sovereign power of government. The position is appointive and is made by the city manager. The term of office is indefinite, but being under civil service has some permanency and continuity. The head of this department is the zoning enforcement officer. He advises but does not attempt to fix or control the inspector's actions in the field. He is little more than the senior officer in that department. It also appears the inspector is covered by a "blanket bond"; his starting salary is $229 biweekly, and the ordinance does not call for an oath of office. Certain ability, knowledge, education, experience and training for this position are required; including

good judgment in effecting proper enforcement policies and in dealing with the public.

We are satisfied that all the necessary elements to constitute Mr. McGee a public officer were sufficiently shown and that the trial court did not err in holding as a matter of law Mr. McGee was a public officer as contemplated in section 739.11 of the Code on November 12 and 13, 1964.

III. Appellant next contends, if McGee is held to be an officer within the provisions of section 739.11, that statute is unconstitutional. He maintains the language "any officer contemplated in this chapter" is so vague, ambiguous and uncertain that it denies one charged thereunder his rights under Amendments 5 and 14 to the United States Constitution, and Article I, section 9, of the Iowa Constitution. As we understand it, he contends this section is somehow restricted to specifically mentioned officers in other sections of the chapter, and does not include those officers referred to in section 739.10. Section 739.10 forbids the acceptance of a bribe by "any state, county, township, *city*, school, or *other municipal officer*, not mentioned in this chapter" (emphasis supplied), and we think clearly adds to those specifically mentioned in other sections of the chapter.

Of course, the terms of a penal statute which creates an offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable. Lever Brothers Co. v. Erbe, 249 Iowa 454, 467, 87 N.W.2d 469; Connally v. General Construction Co., 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322. We are satisfied this statute is reasonably clear and inclusive, that men of common intelligence need not guess at its meaning or application, and that it does not violate the due process of law provisions of the State and Federal Constitutions. For other discussions of this question, see City of Des Moines v. Lampart, 248 Iowa 1032, 82 N.W.2d 720.

IV. Appellant next contends the trial court committed reversible error in admitting evidence obtained by the State at defendant's home on the inspector's second visit, in that no warrant was obtained prior thereto. Reference is made to the United States Constitution, Amendments 4, 5 and 14, and the Constitution of Iowa, Article I, section 8; Wong Sun v. United

States, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed.2d 441; Mapp v. State of Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, 84 A. L. R.2d 933; Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436; District of Columbia v. Little, 85 U. S. App. D. C. 242, 178 F.2d 13, 13 A. L. R.2d 954; and State v. Hagen, 258 Iowa 196, 137 N.W.2d 895.

Timely objections were made to all evidence obtained by Inspector McGee on his second visit to defendant's premises, and specifically to the admission of a tape recorder and a recording of the conversation between McGee and defendant that afternoon, and to the permitting of this evidence to be taken into the jury room. This, defendant urges, was reversible error, as was the court's denial of his motion to suppress that evidence. We are satisfied the trial court properly overruled these objections and the motion to suppress.

It is now well established that the Federal Constitution, as interpreted by the United States Supreme Court, prohibits the admission of evidence obtained as a result of an unreasonable search and seizure. Recognizing the provisions of the Federal and State Constitutions and the force of the Mapp v. Ohio decision, we ourselves have formally adopted this so-called exclusionary rule in Iowa. State v. Hagen, supra, 258 Iowa 196, 204, 137 N.W.2d 895, 899; Mapp v. State of Ohio, supra, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081.

In Hagen we said a search and seizure is unreasonable and thereby illegal if "the thing done, in sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation." Usually this is to be determined when the immediate end sought is considered against the private right affected. Obviously, then, each case must to a great extent depend upon its own record, facts and circumstances. State v. Shephard, 255 Iowa 1218, 1223, 124 N.W.2d 712, 715, and citations. We also noted in Hagen that a search is good or bad when it starts, that it does not change character from its success, and that an unlawful search taints all evidence obtained at the search or through leads uncovered by the search.

Thus, the first and primary question before us in this case is whether there was anything unfair or improper in McGee's second visit to defendant's property, whether this entry was made by force, trickery, subterfuge, or in secret, or by invitation or consent. In the Hagen case no permission to enter defendant's premises, actual or implied, appeared. Entry was in secret and by force, and we held the evidence obtained thereby was inadmissible in the criminal prosecution.

In the case at bar the city inspector had left defendant's premises in the forenoon with a promise to defendant, "I'll see you later." He did return a little before 5 p.m. and it clearly appears defendant was expecting him. McGee testified that he parked his car in front of defendant's property and, when defendant drove into his drive a few minutes later, McGee joined him. Defendant did not forbid McGee's entrance to his property, but both men walked to the back and east end of the apartment house where they viewed the work being done. There a second conversation took place. The inspector asked defendant if the addition would only be used to store furniture, as he had indicated that forenoon. In reply defendant said, "maybe something else in the future." Defendant then asked, "Will any other inspectors be here to check it over?" When McGee answered "No", negotiations for the bribe began in earnest, and this conversation was all recorded on McGee's hidden tape recorder. Under this record we are satisfied there was no illegal entry of defendant's premises, but that McGee was there by consent and invitation. His visit was proper and in line with his duty to require conformance with the zoning law. Clearly this is not the case found in District of Columbia v. Little, supra, 178 F.2d 13, cited by defendant, where the inspector entered the home under protest of the defendant.

The mere use of a tape recorder by a public officer while engaged in an inspection provided for by law does not amount to an unreasonable, illegal or unfair seizure banned by our Constitutions. Nevertheless, it is appellant's position that here under these circumstances there was an unreasonable seizure, an invasion of privacy, and perhaps an entrapment, all in violation of Amendments 4, 5 and 14 to the Constitution of the

United States. We do not agree. The cases he cites all relate to an unauthorized search, an illegal entry, and with those pronouncements we have no quarrel. We find nothing fundamentally unfair or unreasonable in what McGee did here, unless it was the fact that he did not advise defendant that he was recording their conversation. Defendant freely chose to discuss his desire to have this zoning violation overlooked and to offer McGee a check to forget it. He was in no way compelled to give evidence against himself. He knew McGee could repeat to others the things said to him in secret. True, his intent to deny them might have been affected, but the truth is the object of this controversy. The tape recorder did no more than corroborate that conversation and protect each conversant against faulty memories. We are satisfied nothing was being seized surreptitiously without defendant's knowledge. As bearing on this matter, see 33 Iowa Law Review, page 472, and 41 Iowa Law Review, pages 685, 686, 687.

The United States Supreme Court in Lopez v. United States, 373 U. S. 427, 83 S. Ct. 1381, 10 L. Ed.2d 462, considered a like situation and like arguments and concluded the inspector could properly testify about his conversation with the defendant in a criminal trial, and that there was no constitutional prohibition against the admission of a secret recording made by the inspector during that conversation. The court held there was nothing unfair or unreasonable in that situation and approved the admission of this evidence in the trial. Defendant has failed to distinguish these cases and, as we do not think they are distinguishable, we follow that decision. There an agent was investigating possible invasion of excise taxes on cabarets. On visiting defendant's place of business, the agent saw things indicating such a tax was due and suggested it to the defendant. According to the agent's testimony, defendant then proposed that the agent drop the matter and gave him $420 with a promise of more in the future. He invited the agent to return and, when he did so with a hidden pocket wire recorder, their next conversation was recorded. This conversation in part also related to the business at hand, the tax form to be filed. The defendant then asked the agent to be on his side, gave him some more money, and promised other benefits to him and his family

if he would not turn him in. The agent was permitted to testify to these conversations, and this testimony, corroborated by the tape recording, was also admitted in evidence. There, as here, it was defendant's contention that the evidence of the recording was inadmissible as the fruit of an illegal and fraudulent entry into defendant's private office, in violation of Amendment 4. The Supreme Court disagreed. It found there was no evidence in the record to constitute entrapment, that the agent's testimony and the wire recording of the conversation were properly admitted in evidence, and that the agent was not guilty of an unlawful invasion of defendant's premises, in violation of his rights under Amendment 4, simply because his apparent willingness to accept a bribe was not real. It specifically held the court should not, in the exercise of its supervisory powers, prevent the introduction of the recording in evidence, since "there has been no manifestly improper conduct by federal officials."

In the case at bar the admission to the defendant's premises, the unsolicited offer, and the attempted bribery, including the check given McGee, were bold advances made to the officer, and we see nothing unfair in denying to the accused constitutional protection just because the offer was made in private and its apparent acceptance was not real. "Electronic eavesdropping" has often survived constitutional challenge, and this is certainly the least objectionable type thereof. Indeed, it only corroborates testimony of a conversation that has no privilege, testimony not susceptible of impeachment, and testimony defendant well knows the inspector may give against him. It is a safeguard for both the accused and the accuser.

Other state courts have also adopted these views. In the recent case of State v. Spica, Mo., 389 S.W.2d 35, 43, the Missouri Supreme Court had before it a similar matter involving so-called seizure unfairness and, in a well-considered opinion, reviewed the federal decisions in Lopez v. United States, supra; Lee v. United States, 343 U. S. 747, 72 S. Ct. 967, 96 L. Ed. 1270; Olmstead v. United States, 277 U. S. 438, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376; and Goldman v. United States, 316 U. S. 129, 62 S. Ct. 993, 86 L. Ed. 1322, and others. It then held a tape recording of a conversation with a suspect in a murder

trial, taken without his knowledge, was admissible and was not an illegal seizure in violation of Amendments 4, 5 and 14 to the Federal Constitution or like provisions of the Missouri Constitution. Also see many cases in annotations, 58 A. L. R.2d 1024, 97 A. L. R.2d 1283, and 10 L. Ed.2d 1169.

V. Finally, we also conclude the evidence here would not sustain a charge of entrapment, even if that issue were properly raised, which we seriously doubt. The burden of such an issue, of course, is defendant's. Lopez v. United States, supra. Here there was no showing the inspector or his advisors did anything which might well have induced the accused to commit the crime charged. The mere fact that McGee may have expected a repetition or continuance of an attempt to bribe him, did not alone make his return to the premises with a hidden tape recorder an invitation to commit a crime of bribery. There was nothing to indicate the inspector requested a bribe. On the other hand, his rightful purpose to obtain compliance with the zoning law must be presumed. It justified his return, and the hidden tape recorder furnished him protection from false charges that could be filed against him under section 739.10, Code 1962.

Having found no reversible error, the judgment of the trial court must be affirmed.—Affirmed.

All JUSTICES concur.