**Kenneth E. VANDER LINDEN, Appellant,**

v.

**Paul CREWS et al., Appellees.**

**No. 55348.**

Supreme Court of Iowa.

March 28, 1973.

Bert A. Bandstra, Knoxville, for appellant.

Richard C. Turner, Atty. Gen., and Larry M. Blumberg, Asst. Atty. Gen., Des Moines, for appellee Paul Crews.

Heard by MASON, RAWLINGS, LeGRAND, REES, UHLENHOPP, HARRIS and McCORMICK, JJ.

REES, Justice.

This appeal is from an order of the trial court sustaining motion for summary judgment of defendant and sole appellee, Paul Crews, who with the other defendants had been sued by plaintiff for damages based upon plaintiff's claim he had been maliciously prosecuted by defendants.

Defendant Crews, on October 19, 1969, was Secretary of the Iowa Board of Pharmacy Examiners, and was designated as Director of Drug Law Enforcement. His duties embraced planning, organizing and directing field operations necessary to control illegal narcotic and dangerous drug traffic, to investigate complaints or incidents of pharmacy law violations, and to gather evidence and assist in the preparation of court cases against violators. Plaintiff Vander Linden was the owner and proprietor of a pharmacy in Pella. On October 19, 1969 he was arrested by defendant Crews without a warrant and taken before a justice of the peace where Crews executed and filed a preliminary information charging plaintiff with the sale of stimulant drugs without a prescription in violation of chapter 189 of the Acts of the 62nd General Assembly (now chapter 204A, Code of Iowa, 1971).

Plaintiff was indicted by the grand jury of Marion County, and was later tried to a jury which returned a verdict of acquittal; thereafter, plaintiff instituted his action against defendants based upon his claim of malicious prosecution.

Defendant-appellee Crews filed his motion for summary judgment, supported by affidavit, in which he alleged he was a public officer in his capacity as Secretary of the Iowa Board of Pharmacy Examiners, and was immune from suit under the doctrine of judicial immunity. Motion for summary judgment was sustained by trial court and plaintiff appeals.

In his petition, plaintiff alleged defendant Crews, between the dates of October 14, 1969 and October 19, 1969, maliciously conspired with defendant Snyder and arranged for the wrongful and malicious arrest and prosecution of the plaintiff, and further asserts that at the time the arrest without warrant of the plaintiff was made, that the defendants nor any of them had any reasonable grounds or probable cause for making said arrest.[1] In his answer, defendant Crews denies the absence of reasonable grounds and probable cause for making the arrest and further denies he was activated by malice in the conduct of his duties including the arrest and detention of plaintiff.

In ruling upon defendant Crews' motion for summary judgment, the court found Crews, as Secretary of the Iowa Board of Pharmacy Examiners, occupied a position created by section 147.98 of the Code, 1971, and that he was designated as Director of Drug Enforcement under sections 147.95 and 147.99, The Code. The court found that as such secretary and director, defendant Crews is a public officer within the meaning of that term and as defined by this court in State v. Taylor, 260 Iowa 634, 144 N.W.2d 289.

Trial court further found defendant Crews should be granted immunity from suit where he was acting within the scope of his duties and the motion of said defendant for summary judgment was sustained, and as against said defendant plaintiff's petition was dismissed.

Plaintiff advances two errors upon which he relies for reversal: (1) that trial court erroneously held that defendant Crews was a "public official" and not a "peace officer", and (2) trial court erroneously extended to defendant Crews judicial immunity from civil suit bottomed on false arrest and malicious prosecution.

I. Insofar as the matter now before us is concerned, we feel whether Crews was a "public officer" or a "peace officer" is a distinction without a difference.

Section 147.98, The Code, provides that the Board of Pharmacy Examiners shall

have the right to employ a full-time secretary who shall not be a member of the examining board, and at such compensation as may be fixed from time to time by the biannual salary act. Section 147.99 provides the secretary of the pharmacy examiners shall, upon the direction of said examiners, make inspections of alleged violations of the provisions of the act creating the Board of Pharmacy Examiners, and shall be allowed necessary traveling and hotel expenses in making such inspections.

Section 147.95 provides that the practice act insofar as it affects the practice of pharmacy shall be enforced by the Board of Pharmacy Examiners, and that officers, agents, inspectors and representatives of the Board of Pharmacy Examiners shall have all the powers and status of peace officers when enforcing the act.

Section 204A.8, The Code, 1971, is embraced in the statute which is designed to regulate traffic in depressant, stimulant, counterfeit and hallucinogenic drugs. The duties of enforcing the statute are imposed upon the Board of Pharmacy Examiners. Section 204A.8 provides:

> "Any officer or employee of the board designated by the secretary of the board to conduct examinations, investigations, or inspections under this chapter relating to depressant, stimulant or counterfeit drugs shall have all the powers of other peace officers and may arrest without warrant for offenses under this chapter committed in his presence, or, in the case of a felony, if he has probable cause to believe that the person arrested has committed or is committing such offense. Such officers and employees shall have the same powers as other peace officers to seize drugs or articles used in the manufacture or sale of drugs which they have reasonable grounds to believe are in violation of this chapter. Such drugs or articles shall be subject to condemnation."

We agree with trial court defendant Crews was a public officer. This court considered fully the question of the status of one holding a public position in our early case of State v. Spaulding, 102 Iowa 639, 72 N.W. 288, 289. Also, in State v. Taylor, 260 Iowa 634, 144 N.W.2d 289, 292, we said five essential elements are required by most courts to make a public employment a public office, namely: (1) the position must be created by the constitution or legislature, or through authority conferred by the legislature; (2) a portion of the sovereign power of government must be delegated to that position; (3) the duties and powers must be defined directly or impliedly by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law; and (5) the position must have some permanency and continuity and not be only temporary and occasional. See also cases cited in State v. Taylor, *supra*.

We note, also, section 748.3, The Code, 1971, defines "peace officers". Said section provides:

> "The following are 'peace officers':
>
> "1. Sheriffs and their deputies.
>
> "2. Constables.
>
> "3. Marshals and policemen of cities and towns.
>
> "4. All special agents appointed by the commissioner of public safety and all members of the state department of public safety excepting the members of the clerical force.
>
> "5. Such persons as may be otherwise so designated by law."

Irrespective of the foregoing statute, we hold defendant Crews came within the guidelines laid down in State v. Taylor, *supra*, and that as Secretary of the Board of Pharmacy Examiners he is a "public officer".

II. Appellant and appellee concede the question as to whether defendant Crews is protected by the cloak of judicial or gov-

ernmental immunity is a matter of first impression here. This is virtually correct insofar as the question of governmental immunity pertains to a person who does not occupy a judicial position.

We have had occasion to consider the question of judicial immunity as it applies to judicial officers, particularly, justices of the peace. In Huendling v. Jensen, 168 N.W.2d 745, 749 (Iowa 1969), we have said justices of the peace are immune from civil liability even though they act in excess of their jurisdiction. At page 751 of 168 N.W.2d (in quoting from Bradley v. Fisher, 13 Wall. 335, 347, 80 U.S. 335, 347, 20 L.Ed. 646), this court said:

"For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful."

We have more recently, in Osbekoff v. Mallory, 188 N.W.2d 294 (Iowa 1971), reiterated our stand that the doctrine of judicial immunity extends to courts of limited jurisdiction, but have also announced the rule that when a minor magistrate acts wholly without jurisdiction, civil liability attaches for his malicious and corrupt abuse of process, and his willful and malicious oppression of any person under the pretense of acting in his official capacity. See Osbekoff v. Mallory, *supra,* at page 300 of 188 N.W.2d. We have not, however, extended the doctrine of judicial or governmental immunity to other offices of a nonjudicial character, and decline to do so now.

We have reviewed authorities from other jurisdictions, and find the troublesome question of the extension of judicial or governmental immunity to nonjudicial officers to be obscured by a considerable penumbra. We are aware the federal courts and the courts of sister jurisdictions, notably California, have extended the protection of the doctrine to all sorts of minor functionaries. Judicial immunity has been extended in the following cases: Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L. Ed.2d 1434 (1959) (Acting director of Office of Rent Stabilization—malicious defamation); Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959) (Commander, Boston Navy Yard—defamation); Ove Gustavsson Construction Co. v. Floete, 299 F.2d 655 (2d Cir. 1962), cert. den., 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed. 2d 1050 (Contracting Officer of General Services Administration); Blitz v. Boog, 328 F.2d 596 (2d Cir. 1964) (Government psychiatrist—false imprisonment); Brownfield v. Landon, 113 U.S.App.D.C. 248, 307 F.2d 389 (1962), cert. den., 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (Air Force inspector—defamation); Bershad v. Wood, 290 F.2d 714 (9th Cir. 1961) (Internal Revenue Service Officers); Koch v. Zuieback, 194 F.Supp. 651 (S.D.Cal.1961), aff'd., 316 F.2d 1 (9th Cir.) (local draft board officials); Gamage v. Peal, 217 F. Supp. 384 (N.D.Cal.1963) (Air Force doctor); Toscano v. Olesen, 189 F.Supp. 118 (S.D.Cal.1960) (postal inspector).

At state levels, the doctrine has been extended in: Jones v. Czapkay, 182 Cal.App. 2d 192, 6 Cal.Rptr. 182 (1960) (health officer—failure to quarantine); List v. O'Connor, 21 Ill.App.2d 399, 158 N.E.2d 103 (1959) (park district employee—negligently allowing motorcycle racers on ice); Weast v. Budd, 186 Kan. 249, 349 P.2d 912 (1960) (city manager for instituting eminent domain proceedings); Carder v. Steiner, 225 Md. 271, 170 A.2d 220 (1961) (prison warden and guard in the absence of malice); Peterson v. George, 168 Neb. 571, 96 N.W.2d 627 (1959) (state veterinarian); Bedrock Foundations, Inc. v. Brewster, 31 N.J. 124, 155 A.2d 536 (1959)

(highway supervisor); Jarrett v. Wills, 235 Or. 51, 383 P.2d 955 (1963) (superintendent of home for mentally deficient); Torres v. Owens, 380 S.W.2d 30 (Tex.Civ. App.1964) (county navigation commissioners); and, Corrao v. Mortier, 7 Wis.2d 494, 96 N.W.2d 851 (1959) (licensing official at least if no malice).

In concluding defendant Crews was protected by the mantle of judicial immunity, trial court relied upon and in its order sustaining defendant's motion for summary judgment, cited extensively from the case of Gregoire v. Biddle, 177 F.2d 579 (2d Cir., 1949). This action was for damages, plaintiff contending he had been arrested by the defendants, two United States Attorneys General, two Directors of the Enemy Alien Control Unit, and the District Director of Immigration at Ellis Island, on the pretense that he was German and an enemy alien. He had been kept in custody from 1942 to 1946, although the Enemy Alien Hearing Board had ruled he was a Frenchman and not an enemy alien. In Gregoire, at page 581 of 177 F.2d, the court said:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as *res nova,* we should not hesitate to follow the path laid down in the books."

We are unimpressed by the fears expressed by Judge Hand in *Gregoire* set out above. We believe it possible to determine whether claims for damages for malicious prosecution are well founded, and agree with certain language quoted above that to deny a person claimed to be injured by the malicious action of an officer not occupying a judicial position, to be "monstrous".

The courts of Michigan had not come to grips with the question of police immunity from civil suit for malicious prosecution until the pronouncement of the Court of Appeals of Michigan in Belt v. Ritter, 18 Mich.App. 495, 171 N.W.2d 581. In *Belt,* plaintiff was the owner and operator of a truck-leasing business, and the defendants were enforcement officers for the Michigan Public Service Commission. The defendants caused the arrest and prosecution of plaintiff several times between October 1961 and March 1964 on the charge of hauling for hire without public service commission authorization. Two of the prosecutions resulted in acquittal for plaintiff, and based on them plaintiff brought civil actions against the defendant officers, charging malicious prosecution, false arrest and false imprisonment. All of the claims were disposed of except plaintiff's claim for damages for malicious prosecution. Defendants' primary contention was that they

should have been granted summary judgment because police officers in Michigan should have immunity from suit for malicious prosecution, and placed reliance on White v. Towers, 37 Cal.2d 727, 235 P.2d 209, 28 A.L.R.2d 636.

In *White, supra,* the California court declared full immunity for peace officers. In that case, a fish and game investigator was granted immunity from civil suit even where the officer acted maliciously and without probable cause so long as he acted within the scope of his authority. They based such result on the central philosophical problem that it should be the public policy to protect individual citizens from oppressive official action, but, on the other hand, there was a real need of promoting the fearless and effective administration of the law for the whole people by protecting public officers from vindictive and retaliatory damage suits. The California court decided that the latter consideration was the more important, and it justified its denial of civil redress to citizens claiming injury by oppressive official action by saying that a criminal prosecution for official misdeeds would vindicate the victim to some extent and would serve the public better than a civil damage action.

In refusing to follow the lead of the California court in *White,* the Michigan Court of Appeals said,

"We certainly agree with the proposition that our police officers should be encouraged to enforce the law vigorously. However, we do not share the fear stated in White v. Towers, *supra,* and other cases, that a limited liability for malicious prosecution would force policemen to become timid in doing their job. No evidence other than judicial supposition has been presented for such a view."

Belt v. Ritter, *supra,* 171 N.W.2d at page 585. The decision of the Court of Appeals in Belt v. Ritter was affirmed by the Supreme Court of Michigan in 385 Mich. 402, 189 N.W.2d 221. In so affirming the Court of Appeals, the Michigan Supreme Court, at page 223 of 189 N.W.2d, quoted from the dissent of Justice Carter in White v. Towers, *supra*:

" 'The majority opinion states that public officers should be protected from *"vindictive and retaliatory damage suits."* The reverse situation is presented here: any employee, clerk, assistant, investigator, inspector, or deputy is, by this holding protected when he has instigated the commencement and prosecution of a vindictive and malicious suit. This is true because the allegations of plaintiff's complaint must be taken as true, and he has alleged that the action was brought with malice and without probable cause.' "
" * * *

"With that reasoning, we agree. Extension of immunity to virtually any peace officer or law enforcement officer would result in a practical nullification of the tort of malicious prosecution. We conclude that assurance of full compensatory justice to the damaged individual should be paramount, and that the interest of the individual and protection from *mala fide* prosecutions is best assured by making the putative tortfeasor civilly liable for malicious prosecution."

 In summary, we conclude that the doctrine of judicial immunity shall not be further extended to protect and shield nonjudicial officers from civil suits where actual malice is alleged. The action of the trial court in sustaining the motion for summary judgment of defendant Crews is, therefore, reversed.

Reversed.