**STATE of Iowa, Plaintiff–Appellee,**

v.

**William BAKER, Defendant–Appellant.**

No. 87–1718.

Court of Appeals of Iowa.

March 16, 1989.

Larry F. Woods, Oelwein, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., and J.G. Johnson, Asst. Fayette County Atty., for plaintiff-appellee.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

DONIELSON, Judge.

The defendant appeals his conviction, following a bench trial, for violating Iowa Code section 204.402(1)(e), which makes it a crime to maintain premises where a controlled substance—in this case, marijuana—is used, kept, or sold. He contends that the trial court erred by overruling his motion to suppress evidence seized during a warrantless search of a building he believed he had rented and in which he had in any event a reasonable expectation of privacy. He also asserts that the trial court abused its discretion in sentencing.

Acting without a warrant but with the permission of the absentee landowner, the

sheriff broke into a Fayette County farmhouse and seized many marijuana plants which he found there in various stages of drying and manufacture. On the basis of this evidence, William Baker and his brother, Steven, who were occupying the farmhouse, were charged with assorted drug violations. The district court eventually found them guilty, following a bench trial, under Iowa Code section 204.402(1)(e).

I. Defendant contends that the evidence used to convict him should have been suppressed because it was obtained by the State in a warrantless search of the place where defendant was living in violation of his reasonable expectation of privacy. The State asserts that defendant possessed no legal interest in the abandoned farmhouse; therefore, defendant cannot challenge a search authorized by the owner.

The defendant claims his constitutional rights were violated; therefore, our review is de novo. We independently evaluate the totality of the circumstances. *Bettuo v. Pelton*, 260 N.W.2d 423, 425 (Iowa 1977).

The first question to be decided in this matter is whether the defendant has standing to raise the issue of the legitimacy of the search. In order to challenge the constitutionality of the search, defendant must allege and prove both injury in fact and that the intrusion violated his own legitimate expectation of privacy as opposed to the rights of a third party. *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 427, 58 L.Ed.2d 387, 398 (1978); *State v. Graham*, 291 N.W.2d 345, 348 (Iowa 1980). The mere fact that seized evidence is being used against defendant does not provide standing. *State v. Dixon*, 241 N.W.2d 21, 23 (Iowa 1976).

A person has standing to challenge the search if they had an interest protected by the fourth amendment, which was violated. *State v. Graham*, 291 N.W. 2d at 388. Defendant must show a legitimate expectation of privacy in the particular area searched. *State v. Henderson*, 313 N.W.2d 564, 565 (Iowa 1981).

Whether or not defendant was "legitimately" on the premises is not the controlling factor. *Rakas*, 439 U.S. at 147, 99 S.Ct. at 432, 58 L.Ed.2d at 404. The U.S. Supreme Court has repeatedly repudiated the notion that property law determines the extent of a person's fourth amendment rights. *U.S. v. Salvucci*, 448 U.S. 83, 91, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 628 (1980). As long as the defendant had a legitimate expectation of privacy in the farmhouse where he was living, it does not matter for the purposes of standing whether or not a lease actually existed.

What does matter is whether defendant had a legitimate expectation of privacy. The Supreme Court discussed the possible bounds of this right in *Rakas*, 439 U.S. at 143–44, 99 S.Ct. at 430, 58 L.Ed.2d at 401 (fn. 12). It was said that:

a "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate." His presence, ... is "wrongful"; his expectation is not "one that society is prepared to recognize as reasonable." ... Legitimation of expectations of privacy by law must have a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, ..., and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. [citations omitted].

The language quoted previously supports defendant's legitimate expectation of privacy. Defendant thought he had rented the property from the owner. His fourth amendment right arises from property law even though he was not in techni-

cal compliance with the requirements of acquiring a leasehold interest. It was reasonable for defendant to believe he lawfully possessed the farmhouse; therefore, he had a reasonable expectation of privacy.

The following facts support defendant's reasonable expectation of privacy. Defendant contacted the manager of the farm to find out who owned the farmhouse and how to reach him. Defendant called the owner, Mr. Crump, and asked about renting the house. On the phone they discussed the amount of monthly rent and that defendant would pay in advance. Mr. Crump said he required a $100 deposit. Defendant was told he could pick up the keys. Defendant said he was told to get the keys from Schulz Realty; however, Mr. Crump said he told him to get the keys from Roger Schulz to view the premises only.

Defendant later went to Schulz Realty. A secretary there accepted the $100 deposit and gave him a cash receipt. The realtor was out of town, so the money was placed in an envelope in her desk drawer.

At the end of September, defendant brought in $200 for rent. Again the secretary wrote out a receipt and placed the money in the envelope in the realtor's drawer. The money was never placed in the realtor's escrow account.

The realtor had been involved with the property in the past even though she denies being an agent for it this time. Upon finding the money, she made one attempt to call Mr. Crump, but she was unsuccessful. She kept the money for fourteen days without notifying anyone.

One time defendant asked the agent if he could put the lock on the door and she said yes. She also gave defendant permission to buy cleaning supplies and said maybe Mr. Crump would reimburse him. At no time before the date of the incident, October 13, 1986, was defendant told that he had not rented the property or that the realtor was not the agent for Mr. Crump.

However, one week prior to the arrest, the farm manager, having seen lights on, called Mr. Crump and asked about it. Mr. Crump said he had not rented the place.

So the manager's son spoke to the defendant about the place. This conversation prompted the defendant to return to the realtor's office. He requested she call Mr. Crump. She did, but again no one answered. She told defendant to call him himself, so he did later that day. Shortly after defendant spoke to Mr. Crump, Mr. Crump called the farm manager and, according to the defendant, told him the house was rented.

Under these circumstances, defendant had a reasonable expectation of privacy. His presence on the property, although for a wrongful purpose, is one that society is prepared to recognize as reasonable. Defendant relied on the realty company who accepted and kept his money for two to three weeks. Defendant quickly reacted when his presence was questioned. We find defendant had a protected fourth-amendment right on the premises; therefore, he has standing to challenge the search.

II. Once standing is established, the next question we face is whether there is a search in the fourth amendment sense. This amendment protects people from *unreasonable* government intrusions into their legitimate expectations of privacy. *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538, 546 (1977). People have a right to be secure in their persons, houses, papers, and effects. U.S. Const.Amend. IV. This protection applies against the State. *State v. Hagen*, 258 Iowa 196, 204, 137 N.W.2d 895, 899 (Iowa 1965).

No warrant was issued in this case. Warrantless searches and seizures are per se unreasonable unless they fall within one or more of the exceptions to the warrant requirement. *State v. Roth*, 305 N.W.2d 501, 504 (Iowa 1981). Those who assert that a search falls within an exception must prove the exception's applicability by a preponderance of the evidence. *State v. Folkens*, 281 N.W.2d 1, 3 (Iowa 1979).

The State has failed to meet this burden. It bases its entire argument on the property owner's consent to the search.

A search is good or bad when it starts and does not change character from its success. *Hagen,* 137 N.W.2d at 900. The results obtained are *not* a factor to be considered in determining reasonableness of the search. *Id.*

The sheriff was acting at the request of the property owner. However, there is evidence which indicates the sheriff knew before the search that defendant claimed to have rented the farmhouse. There is also evidence in the record that the sheriff had received an anonymous tip that the Bakers were involved in illegal marijuana growing and that they had been seen hanging around this farmhouse. In fact, the sheriff was at the house that day investigating the tip. The sheriff also knew that the realty company was involved in the rental of the property. The sheriff never verified this information.

Under a valid lease, the landlord has a right to enter the occupied premises under certain conditions provided by Iowa Code sections 562A.19 and 562A.29. These code provisions *cannot* supersede defendant's constitutional rights under the fourth amendment, but are part of the lease agreement which allows *reasonable* entry by the landlord. *State v. Koop,* 314 N.W. 2d 384, 387 (Iowa 1982). If the landlord's entrance would be reasonable, then it follows that the sheriff's entrance with the landlord's consent would also be proper. *Id.* However, none of the statutory conditions have been met.

When the farm manager contacted the sheriff, the sheriff called for his deputy to join him at the house. No one answered their knocks on the doors and windows. So the officers gained entrance by removing an aluminum window and a hanging quilt. At that time they found the place to be full of drying marijuana plants. Other officers were called and the Bakers were arrested when they returned.

The sheriff had been on the premises for over two and one-half hours. Clearly no exigent circumstances existed and none have been claimed. The sheriff knew there was a question on the validity of Mr. Crump's consent to enter the premises.

Yet at no time did the sheriff attempt to obtain a search warrant.

> The right of officers to thrust themselves into a house is a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance, when the right of privacy must yield to the right of search, is, as a rule, to be decided by judicial officer not by a sheriff or peace officer.

*Hagen,* 137 N.W.2d at 900.

The sheriff's entry into the house was unreasonable and the search that followed was unlawful. All the evidence obtained as a result of this entrance is tainted and thus admission of the evidence constitutes prejudicial error requiring reversal. *Id.* Therefore, we reverse the conviction and remand for a new trial with the tainted evidence suppressed.

REVERSED AND REMANDED.