TECLA HUTTON, Appellee, v. STATE OF IOWA (CONSERVATION COMMISSION), Appellant.

No. 46529.

OCTOBER 17, 1944.

John M. Rankin, Attorney General, and Robert L. Larson, Assistant Attorney General, for appellant.

Lee & Walsh, of Ames, for appellee.

OLIVER, J.—M. L. Hutton, state conservation director, died in February 1941, from injuries received shortly prior thereto in an automobile accident, arising out of and in the course of the performance of his duties. His widow instituted proceedings under the Workmen's Compensation Act against State of Iowa (Conservation Commission). An award of compensation was made upon arbitration, was sustained upon review, and was affirmed by the district court. The State has appealed.

Section 1421, Code of Iowa, 1939, provides, in part:

"3. The following persons shall not be deemed 'workmen' or 'employees': * * *

"d. * * * an official elected or appointed by the state * * *."

Appellant contends decedent was not an employee but was a public officer within the meaning of the foregoing exception.

The State Conservation Commission was created in 1935 by chapter 13 of the Acts of the Forty-sixth General Assembly, which consolidated in it the offices, duties, and powers of the state fish and game commission, the state board of conservation, and the forestry commissioner. The part of the act creating the Commission and prescribing its organization (with certain subsequent amendments) is now chapter 85.1, sections 1703.28 to 1703.53, Code of Iowa, 1939.

Section 1703.49 requires the Commission to protect, propagate, and preserve the fish, game, fur-bearing animals, and protected birds of the state and to enforce laws, rules, and regulations relating thereto. Section 1703.50 empowers the Commission to expend all moneys of the fish and game protection fund; to

acquire, improve, and maintain lands and waters for public hunting, fishing, and trapping, and for fish hatcheries, game farms, and wild-life refuges; to furnish fish, game, and wild life to stock the lands or waters of the state; to adopt departmental rules governing procedure; to adopt and enforce administrative orders fixing seasons, territorial limits, bag limits, etc. of fish, game, and wild life; and to pay all salaries and operating expenses of the department. The two foregoing sections were originally enacted in 1931 in the act creating the state fish and game commission [chapter 26, Acts of the Forty-fourth General Assembly]. Section 1703.38 provides:

"The commission shall employ an administrative head who shall be known as state conservation director and be responsible to the commission for the execution of its policies. He shall be a person of executive ability and possess special knowledge relative to the duties herein imposed on the commission."

Section 1703.39 provides the director shall serve during the pleasure of the Commission, at an annual salary, not to exceed $4,000, to be fixed by it. Section 1703.40 provides the director shall, with the consent of the Commission, and at salaries to be fixed by it, employ such assistants as may be necessary to carry out the duties imposed on the Commission, and under the same conditions shall appoint such officers, to be known as state conservation officers, as may be necessary to enforce the laws, rules, and regulations, the enforcement of which are imposed upon said Commission. Section 1703.43 provides:

"The appointees and employees aforesaid may be removed by the said director at any time subject to the approval of the commission."

It has been said that it is difficult to define with accuracy the term "public officer" as distinguished from "employee." One definition approved by various courts is that to make a public employment a public office five elements are indispensable:

(1) It must be created by the constitution or legislature or through authority conferred by the legislature. (2) It must possess a delegation of a portion of the sovereign power of government. (3) The duties and powers must be defined, directly

or impliedly, by the legislature or through legislative authority. (4) The duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body. (5) The office must have some permanency and continuity, and not be only temporary and occasional. State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411, 53 A. L. R. 583. See, also, annotations 53 A. L. R. 595, 93 A. L. R. 333, and 140 A. L. R. 1076.

Barney v. Hawkins, supra, quotes with approval from the frequently cited case of State v. Spaulding, 102 Iowa 639, 72 N. W. 288. While the definition in the Spaulding case is in different form and somewhat less comprehensive, the discussion therein recognizes the elements listed above. Various authorities recognize other elements which are usually, though not necessarily, attached to a public office. However, each case turns upon its own particular circumstances.

In this case most of the essential elements of a public office are present. The focal question is whether or not the statutes delegate to the conservation director sovereign powers, to be exercised by him, independently, for the benefit of the public.

The only statutes relating to the powers and duties of the director of conservation thus far mentioned are contained in chapter 85.1 of the Code. Apparently no other statutes were presented or considered in the various trials leading up to this appeal. Had the powers and duties of the director been limited to those conferred in said chapter it may be that the position would not have been a public office. See In re Nagler, 194 Wis. 437, 216 N. W. 493; Kirby v. Nolte, 349 Mo. 1015, 164 S. W. 2d 1; State ex rel. Nagle v. Page, 98 Mont. 14, 37 P. 2d 575, and authorities hereinbefore cited. However, there are various other statutes relating thereto. All of the pertinent statutes should be considered and interpreted together.

These statutes consist in part of various relatively recent legislative acts intermingled with former statutes, with numerous amendments, additions, and repeals. Prior to 1931, what may be called the fish and game department was in charge of the

state game warden. His powers and duties were comparable to those now exercised in that sphere by the Conservation Commission.

Chapter 26, Acts of the Forty-fourth General Assembly, abolished the office of state game warden, created the state fish and game commission, defined its general duties and specific powers, and required it to employ a state fish and game warden to have charge of all activities under its jurisdiction. The act contained also a general provision to the effect that all of the powers and duties of the state game warden were transferred to the state fish and game commission. Various statutes conferring specific powers and duties upon the state game warden were not amended, except as affected by said general provision, and the words "state game warden" remained therein until the State Conservation Commission was created by chapter 13, Acts of the Forty-sixth General Assembly, as heretofore noted. That act contained a general provision which resulted in the amendment of all such statutes by substituting in each statute the words "state conservation director" for "state game warden." As a result of the foregoing circumstances, there are some lack of uniformity and some inconsistencies in the statutes.

Code sections 1709 and 1709.1 state that the director shall have the right to establish and control fish hatcheries and game farms, and stock the lands and waters of the state therefrom; to establish game refuges, etc. These, and other statutory provisions of the same nature, if literally interpreted would conflict with the provisions of chapter 85.1, Code of 1939, which delegate such powers and duties to the Commission and provide it exclusively with the means to perform the same. Hence, such provisions should not be interpreted as empowering the director to act independently in said respects but only under the authorization and direction of the Conservation Commission.

However, various other statutes authorize or require the director of conservation to exercise certain sovereign powers for the benefit of the public independently and in his own right. See McKinley v. Clarke County, 228 Iowa 1185, 293 N. W. 449. The following are clearly in this category. Code section 1714 requires the director to seize unlawful game, with or without

warrant. Section 1787 directs him to seize contraband shipments. Code sections 1741 and 1742 provide that dams, etc., across state waters, obstructing the passage of fish, may not be erected or changed except with the written approval of the director. Sections 1745 and 1746 require the director to let contracts for the removal of undesirable fish, subject to the approval of the bid, contract, and bond by the state treasurer. Section 1794.085 authorizes the director to designate depositaries to sell fish and game licenses. Section 1794.099 requires the director to seize certain contraband devices or materials, without process, and to deliver them to a magistrate.

Although the sovereign powers delegated by statute to the position have reference to only a portion of its duties, we think such powers are substantial. It is our conclusion, based upon a consideration of all the pertinent statutory provisions, that the director of conservation was a public official, within the exception of the Workmen's Compensation Act, and hence that the award of compensation for his death was erroneous.—Reversed.

All JUSTICES concur.