STATE of Iowa, Appellant,

v.

Leslie D. PINCKNEY et al., Appellees.

No. 61727.

Supreme Court of Iowa.

March 21, 1979.

Thomas J. Miller, Atty. Gen., and Bruce L. Cook, Asst. Atty. Gen., for appellant.

William H. Cone, Jr., Des Moines, for appellee Pinckney.

Donald A. Wine of Thomas, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellees Dietz and Hemmen.

Daniel W. Boyle of Shulman, Phelan, Tucker, Boyle & Mullen, Iowa City, for appellee Paine.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McCORMICK, and LARSON, JJ.

HARRIS, Justice.

The controlling question is whether Leslie D. Pinckney, a liquor properties manager for the Iowa beer and liquor control department, was a "public officer" within the meaning of §§ 739.10 and 739.11, The Code, 1975. If not, charges against various defendants will not stand. The trial court held that Pinckney was not a "public officer" and we agree.

Three county attorney's informations were filed against Pinckney, charging him with accepting a reward for public duties in violation of § 739.10, The Code, 1975. At the same time two informations were filed against John Paine and one each against Christian Hemmen and Donald Tietz, charging the three with corruptly influencing an official in violation of § 739.11, The Code, 1975. It was alleged that they gave Pinckney valuable consideration for the purpose of influencing official acts he undertook for the liquor control department.

On motions filed by the various defendants, the trial court set aside the informations because Pinckney's position as liquor properties manager was not a public office.

I. Section 739.10, The Code, 1975, proscribed as a felony the acceptance by any *public officer* of a reward for the performance of any official duty. Section 739.11, The Code, 1975, proscribed as a felony the giving or offering of any reward to a *public officer* for the same purpose.

■ The legislature chose not to proscribe, in these sections, the same conduct by or involving a public employee. This appeal is unaffected by §§ 722.1 and 722.2, The Code, Supp.1977. In the recent Code revision bribery and the acceptance of bribes are proscribed for any public officer or *employee*. The State's claim involving Pinckney has to do with actions alleged to have occurred prior to the enactment of the criminal code revision. Accordingly, the language addressed to a public "employee" does not apply in this case.

Liquor control in Iowa is provided for in chapter 123, The Code. The Iowa beer and liquor control department was created by § 123.4. A council, created by § 123.5, is given the power and responsibility to enforce liquor control. The council is required to appoint a director. § 123.10. The director's general powers are outlined in § 123.20. Under § 123.21 the director, with the approval of the council, is authorized to make departmental rules. This rulemaking power is subject to the provisions of chapter 17A (Iowa administrative procedure act).

Under this scheme the position of liquor properties manager was established and the position's duties were defined by the director. Pinckney was designated liquor properties manager by the director. He exercised all of his duties under the general supervision of the assistant director of the department. Pinckney had important responsibilities which he discharged with a great deal of independence. His duties included field inspections of existing liquor store buildings and parking lots, and also those under construction, in order to insure conformance with the department's construction standards.

Pinckney recommended for approval plans and specifications for new liquor store outlets and for the remodeling of existing ones. He inspected various cities in Iowa for potential liquor store sites and recommended actual site selections. He negotiated the renewal of leases. All of these actions in the field were reported to his supervisors and were subject to their approval.

Pinckney's position called for considerable knowledge of Iowa communities, building construction, commercial properties, and property valuation. He had to have a practical knowledge of real estate transactions. Most of all, he had to have a general ability to deal tactfully and effectively with realtors, property managers and owners.

■ It is apparent that Pinckney's de facto responsibilities were considerable. In practice his superiors delegated to him a wider latitude for the exercise of discretion than is accorded some public officers. The difficulty is that a public office is not created by practice.

Our rule, first enunciated in *State v. Spaulding*, 102 Iowa 639, 647, 72 N.W. 288, 290 (1897) was restated in *State v. Taylor*, 260 Iowa 634, 639, 144 N.W.2d 289, 292 (1967) as follows:

. . . In the early case of *State v. Spaulding*, 102 Iowa 639, 72 N.W. 288, we fully considered this problem and set forth what we believed were the acceptable guidelines to be used in determining the status of one holding such a public position. We have never departed from them and they are applicable here. To summarize, five essential elements are required by most courts to make a public employment a public office. They are: (1) The position must be created by the Constitution or legislature or through authority conferred by the legislature. (2) A portion of the sovereign power of government must be delegated to that position. (3) The duties and powers must be defined, directly or impliedly, by the legislature or through legislative authority. (4) The duties must be performed

independently and without control of a superior power other than the law. (5) The position must have some permanency and continuity, and not be only temporary and occasional. See *Hutton v. State*, 235 Iowa 52, 54, 55, 16 N.W.2d 18 (workmen's compensation case). Also see annotations, 53 A.L.R. 595, 93 A.L.R. 333, 140 A.L.R. 1076, 5 A.L.R.2d 416, 417. A public office is de jure in its creation. It is not established by de facto operation. In addition to the foregoing authorities see also *Vander Linden v. Crews*, 205 N.W.2d 686 (Iowa 1973); *Francis v. Iowa Employment Security Commission*, 250 Iowa 1300, 98 N.W.2d 733 (1959); *Hutton v. State*, 235 Iowa 52, 16 N.W.2d 18 (1944); *Whitney v. Rural Ind. Sch. Dist.*, 232 Iowa 61, 4 N.W.2d 394 (1942); *McKinley v. Clarke County*, 228 Iowa 1185, 293 N.W. 449 (1940); *Schroyer v. Jasper County*, 224 Iowa 1391, 279 N.W. 118 (1938); *Hop v. Brink*, 205 Iowa 74, 217 N.W. 551 (1928); *Smith v. Van Buren County*, 125 Iowa 454, 101 N.W. 186 (1904).

The question then becomes whether Pinckney was a public officer under the definition previously quoted from *State v. Taylor*, supra. After considering the operation of the liquor control council and the functions of the various offices established in chapter 123 we find Pinckney was an employee and not an officer. The legislative scheme for liquor control has been previously described. The director has authority under § 123.21(1) to prescribe duties of employees such as Pinckney.

■ The four defendants contend that under this scheme the director was given the power to create the position of properties manager. But such a power does not carry with it the authority to make this position a public office.

Turning to the various tests for determining if a position is a public office, outlined in *Taylor*, we note Pinckney's position does not necessarily have permanency or continuity. The position could be abolished at any time without legislation. And, if his position was not abolished, Pinckney could be replaced at any time. Although Pinckney's duties and powers came to be rather

clearly understood by the department, they were never defined pursuant to any legislative authority.

Finally, we turn to the remaining *Taylor* elements. See also *Hutton*, supra, 235 Iowa at 55, 16 N.W.2d at 19:

In this case most of the essential elements of a public office are present. The focal question is whether or not the statutes delegate to the [person in question] sovereign powers, to be exercised by him, independently, for the benefit of the public.

See also *Taylor*, supra, 260 Iowa at 640, 144 N.W.2d at 293.

■ It is the unsupervised exercise of sovereign power which is the hallmark of a public office. Sovereign power was not by statute delegated to Pinckney's position, to be independently exercised by him. The director was given statutory authority to create Pinckney's position. But the legislature did not grant the director any authority to delegate unsupervised sovereign power to the position he created. Legislative intent on this crucial question is clear. It can be seen that by § 123.20 the legislature delegated solely to the director the powers which would have made Pinckney's position a public office.

In any event Pinckney never exercised his authority entirely independently. His acts were routinely reported to and approved by his superiors. In time Pinckney became a much trusted employee and his recommendations unquestionably carried great weight with his superiors. But this in no way detracts from the statutory scheme which presupposed that Pinckney's superiors, and not Pinckney himself, held the sovereign power.

■ We conclude that Pinckney was not a public officer. Proof of such a proposition was a necessary element for the charge against him under § 739.10 and against the other defendants under § 739.11. The trial court was correct in dismissing the informations.

AFFIRMED.