Robert James HEGEMAN, Appellant,

v.

Robert KELCH, Carol Scott–
Conner and R. Edward
Howell, Appellees.

No. 02–0380.

Supreme Court of Iowa.

June 11, 2003.

Rehearing Denied Aug. 5, 2003.

Robert James Hegeman, pro se.

Thomas J. Miller, Attorney General, and George A. Carroll, Assistant Attorney General, for appellees.

LAVORATO, Chief Justice.

Robert James Hegeman, an employee of the University of Iowa Hospitals and Clinics (UIHC), appeals from a summary judgment ruling in which the district court held he was not entitled to relief under Iowa's whistleblower statute against defendants, who were Hegeman's superiors. At issue in this appeal is whether one of the superiors was a public official within the meaning of the statute. The district court ruled he was not and we agree.

The defendants cross appeal from the same ruling in which the district court held that there were factual issues on Hegeman's common-law claim of constructive discharge. Because there is no accompanying claim to the constructive discharge action, we conclude that action must fail.

We therefore affirm on appeal, reverse on the cross-appeal, and remand with directions.

## I. Background Facts and Proceedings.

Hegeman was director of emergency medical services at UIHC from 1992 to June 1997. The University of Iowa actually employed him, and he reported directly to the chair of the department of surgery, Carol Scott–Conner. At all times relevant to this case, the dean of the college of medicine was Robert Kelch. R. Edward Howell was the chief executive officer of UIHC.

In a November 1996 letter, Hegeman informed the dean "of serious problems that have developed in the relationship between emergency medicine and the department of surgery." He expressed his various concerns about staffing and management of the emergency room and about the quality of emergency care at UIHC. From then on, the relationship between Hegeman and his superiors soured, culminating in his resignation in June 1997.

Later, Hegeman sued Kelch, Scott–Conner, Siroos Shirazi (the vice-chair of the department of surgery at UIHC), and Howell. Shirazi was later dropped from the lawsuit.

The petition alleged that subsequent to Hegeman's November 1996 letter and until his resignation, the defendants "took adverse action regarding" his employment at UIHC "in reprisal for" his disclosure or "in an effort to compel [Hegeman's] resignation." The petition set forth three counts. First, the defendants' actions were in contravention of the public policy expressed in Iowa Code sections 70A.28 and 70A.29 (1997) (Iowa's "whistleblower" statute). Second, the defendants' actions violated his constitutional right to free speech. Last, the defendants' actions gave rise to a common-law tort of constructive discharge.

The defendants moved for summary judgment, arguing, among other things, that as a matter of law Hegeman (1) could not state a claim under chapter 70A because he did not report the alleged activity to a "public official" as intended by section 70A.28 and (2) was not constructively dis-

charged. The district court agreed that the defendants were not "public officials" under Iowa law and granted the motion for summary judgment on the claim under the whistleblower statute. However, the court found that factual issues on the constructive discharge claim precluded summary judgment on this claim. Later, the court sustained the defendants' second motion for summary judgment on Hegeman's free speech claim.

Hegeman appealed from the district court's ruling on the claim under the whistleblower statute. The defendants cross-appealed from the ruling on the constructive discharge claim.

## II. Issues.

The district court found that none of the defendants were public officials under Iowa law. Hegeman only contests the court's ruling that Dean Kelch was not a public official within the meaning of section 70A.28.

In their cross-appeal, the defendants contend the district court erred when it failed to grant them summary judgment on Hegeman's constructive discharge claim. In support of their contention, the defendants argue that as a matter of law that claim fails.

## III. Scope of Review.

We review a summary judgment ruling for correction of errors at law. Iowa R.App. P. 6.4; *Sons of the Union Veterans of the Civil War v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 731 (Iowa 2002). Summary judgment is appropriate under Iowa Rule of Civil Procedure 1.981 only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Iowa R.

Civ. P. 1.981(3); *Grinnell Mut. Reinsurance Co. v. Jungling*, 654 N.W.2d 530, 535 (Iowa 2002). We examine the record before the district court to determine whether any genuine issue of material fact exists and whether that court correctly applied the law. *Sons of the Union Veterans*, 641 N.W.2d at 731. Summary judgment is the appropriate remedy where questions of statutory interpretation are involved. *Burton v. Univ. of Iowa Hosps. & Clinics*, 566 N.W.2d 182, 185 (Iowa 1997).

## IV. Dean as Public Official.

**A. Applicable law.** Iowa Code section 70A.28(2) provides in relevant part:

> A person shall not discharge an employee from or take or fail to take action regarding an employee's ... advantage in ... a position in a state employment system administered by ... a state agency as a reprisal ... for a disclosure of any information by that employee to a member or employee of the general assembly, or a disclosure of information to any other *public official* or law enforcement agency if the employee reasonably believes the information evidences a violation of law or rule, mismanagement, a gross abuse of funds, an abuse of authority, or a substantial and specific danger to public health or safety....

Iowa Code § 70A.28(2) (emphasis added). This provision protects state employees who affirmatively disclose to those designated in the statute information evidencing "a violation of law or rule, mismanagement, a gross abuse of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *Id.*

Iowa Code section 70A.28(4) provides that a person who violates section 70A.28(2) commits a simple misdemeanor. *See* Iowa Code § 70A.28(4). Iowa Code

section 70A.28(5) provides that section 70A.28(2) may be enforced through a civil action. *See* Iowa Code § 70A.28(5). Iowa Code section 70A.28(5)(*a*) provides that the person violating section 70A.28(2) is liable to "an aggrieved employee for affirmative relief including reinstatement, with or without back pay, or any other equitable relief the court deems appropriate, including attorney fees and costs." Iowa Code § 70A.28(5)(*a*).

"State employee" and "employee," as used in section 70A.28, are defined to include "persons employed by the state board of regents." Iowa Code § 70A.28(8). The parties do not dispute that Hegeman was a "state employee" at all times. The issue, however, is whether Dean Kelch was a public official.

**B. Iowa cases.** Although there is no Iowa case law that answers the question whether a college dean is a "public official," there has developed considerable Iowa case law addressing the "public official" issue generally. *See, e.g., State v. Spaulding,* 102 Iowa 639, 649–50, 72 N.W. 288, 291 (1897) (treasurer of the commissioners of pharmacy was not a "public officer" within the meaning of statute defining the crime of embezzlement of public money by a "public officer"); *McKinley v. Clarke County,* 228 Iowa 1185, 1186–87, 293 N.W. 449, 450 (1940) (addressing whether a county engineer was an "employee" or an "official" for purposes of determining widow's eligibility for death benefits under the Workers' Compensation Act); *Whitney v. Rural Indep. Sch. Dist. No. 4 of Lafayette,* 232 Iowa 61, 71, 4 N.W.2d 394, 398 (1942) (holding that a schoolteacher elected by the school board was an "employee," not an "official," and therefore entitled to benefits under the Workers' Compensation Act).

In *Hutton v. State,* 235 Iowa 52, 16 N.W.2d 18 (1944), the court for the first time set forth the five "indispensable" elements required to make a public employment a public office: (1) the position must be created by the constitution or legislature or through authority conferred by the legislature; (2) a portion of the sovereign power of the government must be delegated to the position; (3) the duties and powers must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law; and (5) the position must have some permanency and continuity, and not be only temporary and occasional. *Id.* at 54–55, 16 N.W.2d at 19.

Actually, as the court in *Hutton* noted, the five-element test had been around since *Spaulding. See id.* at 55, 16 N.W.2d at 19 ("While the definition in the *Spaulding* case is in different form and somewhat less comprehensive, the discussion therein recognizes the [five] elements listed . . . ."). Iowa cases addressing the issue of "public official" since *Hutton* have used this five-element test to determine whether a position qualifies as that of a "public official." *See, e.g., State v. Taylor,* 260 Iowa 634, 639, 144 N.W.2d 289, 292 (1966), *Vander Linden v. Crews,* 205 N.W.2d 686, 688 (Iowa 1973); *State v. Pinckney,* 276 N.W.2d 433, 435–36 (Iowa 1979).

From these cases, it is clear that the court, when applying the five elements to determine whether the position is that of a "public official," places a great emphasis on two of the elements: (1) the statutory powers and duties of a position, and (2) whether that position exercised sovereign power. *See, e.g., Spaulding,* 102 Iowa at 649, 72 N.W. at 291 (concluding that the treasurer of the commissioners of pharmacy was not a public officer because the position of treasurer "was a creation of the commission ... and at all times subject

absolutely to their control"); *McKinley*, 228 Iowa at 1189–91, 293 N.W. at 451 (concluding that county engineer was an "official" because he furnished a bond and took an oath of office; but more importantly because several statutes defining the powers and duties of the county engineer delegated certain sovereign powers to that position); *Whitney*, 232 Iowa at 71, 4 N.W.2d at 398 (holding that a schoolteacher elected by the school board was not an "official" because "[s]he was not required to give bond or take an oath. None of the statutes impose upon her the exercise of discretion in any way. They delegate no sovereign power to her"); *Hutton*, 235 Iowa at 56, 16 N.W.2d at 20 (concluding that conservation director was an "official" because several statutes "authorize[d] or require[d] the director of conservation to exercise certain sovereign powers for the benefit of the public independently and in his own right"); *Taylor*, 260 Iowa at 639, 144 N.W.2d at 292 (concluding that zoning officer was a public official within meaning of zoning ordinance because "[the zoning inspector's] power and duty are not subject to the will and direction of any superior officer or body. He acts on behalf of the public and, in doing so, exercises a portion of the sovereign power of government"); *Vander Linden*, 205 N.W.2d at 688 (concluding that secretary of the board of pharmacy was a public official because the position of secretary was created by statute and inferring, without much discussion, that the legislature by statute conferred a portion of sovereign power to that position); *Pinckney*, 276 N.W.2d at 436 (concluding that the liquor properties manager for the Iowa beer and liquor control department was not a "public officer" within the meaning of a criminal statute because, most importantly, the legislature did not grant the director of the liquor council any authority to delegate unsupervised sovereign power to the properties manager).

▪■ **C. Analysis.** The district court concluded that Dean Kelch was not a public official under Iowa law because his duties "are under the control of a superior power other than the law," the president of the university. The court did not discuss the other four elements for determining who is a public official.

In support of his contention that the first element is present—the position must be created by the constitution or legislature or through authority conferred by the legislature—Hegeman makes the following argument. The legislature delegated to the board of regents the authority to create officers for the university. *See* Iowa Code § 262.9(2) ("The board shall . . . elect . . . officers"). The board created the position of dean of the college of medicine. *See* Iowa Admin. Code r. 681–12.1(3) ("The dean of each college is its chief administrative officer.") Therefore, Dean Kelch's position was created by authority conferred by the legislature.

While Hegeman is correct that the legislature delegated to the board of regents the authority to create officers for the university, it is not clear from the statute whether the position of "dean" is equivalent to that of an "officer." Moreover, the statute and the rule related to it seem to conflict. The statute grants the board of regents the power to elect the president, treasurer, professors, instructors, officers and employees of each university. Iowa Code § 262.9(2). However, the related administrative rule (specifically addressing the organization of the University of Iowa) indicates "the university has three statutory officers: president, secretary, and treasurer." Iowa Admin. Code r. 681–12.1(2). The rule describes the president as "the chief administrative officer of the university" with "such authority and duties as have

been delegated by the board of regents." *Id.* The rule also indicates the president nominates and the board appoints vice presidents of the university. *Id.* It does not discuss the creation of any other positions at the university.

In addition, the rule Hegeman cites does not purport to "create" the position of dean. It simply states, "the dean of each college is its chief administrative officer." Iowa Admin. Code r. 681–12.1(3). Thus, it does not appear from the applicable statute and rule that the board "created" the position of dean *at all*, let alone through authority conferred by the legislature. Presumably, the university created the position of dean.

In support of his contention that the second element—a portion of the sovereign power of government must be delegated to that position—Hegeman argues as follows. The board delegated the power of sovereign, which it had been given by the legislature, to the dean when the board established that the dean is the chief administrative officer. Iowa Admin. Code r. 681–12.1(3).

We disagree. The rule does not "delegate" any power to the dean. The rule simply describes in very general terms the role of the dean of each college at the university. The only specific delegation of power in the statute or rules is the delegation of power to the president by the board of regents. Iowa Admin. Code r. 681–12.1(2). There is no record evidence to show that the dean exercises sovereign power.

As to the third element—the duties and powers must be defined, directly or indirectly, by the legislature or through legislative authority—Hegeman contends the board, through authority granted by the legislature, defined the duties of the dean of the college of medicine as those of "chief administrative officer." Contrary to

Hegeman's contention, the description of the dean as the "chief administrative officer" is insufficient to meet the requirement that the duties and powers must be defined by the legislature or through legislative authority. We find no other statutes or rule discussing powers or duties of the dean. *Cf. McKinley*, 228 Iowa at 1190, 293 N.W. at 451 (citing numerous code sections referring to powers and duties of county engineer), *Hutton*, 235 Iowa at 56, 16 N.W.2d at 20 (citing several statutes outlining powers and duties of conservation director); *Taylor*, 260 Iowa at 640, 144 N.W.2d at 293 (ordinance described in detail the powers and duties of zoning inspector); *Vander Linden*, 205 N.W.2d at 688 (citing statues outlining duties of secretary of board of pharmacy examiners).

The fourth element—the duties must be performed independently and without control of a superior power other than the law—has been described as "the hallmark of a public office." *Pinckney*, 276 N.W.2d at 436. As to this element, Hegeman takes issue with the district court's conclusion that Dean Kelch's duties were under the control of the university president, "a superior power other than the law." Hegeman contends that as the chief administrative officer, the dean had sovereign authority and could not be supervised by the university president, "who is not a physician" and therefore "is not qualified to exert supervision over the physician head of a faculty of physicians all of whom are engaged in teaching and practice of medicine."

There is no record evidence to suggest that the dean acts independently "without control of a superior power other than the law." Hegeman's contention that the university president, a non-physician, could not supervise the dean of the medical school is without merit. Such a suggestion implies the university president could not

supervise the dean of the law school or the dean of the college of engineering, because the president did not have the requisite expertise in these areas. Moreover, it implies that if the university president would have been a physician, supervision of the dean of the college of medicine would have been possible. The educational background of the university president should not be the determinative factor in establishing whether the dean was subject to the president's supervision.

We conclude that four of the five elements required to make a public employment a public office are missing in this case. The district court was therefore correct when it concluded that Dean Kelch was not a "public official" within the meaning of section 70A.28. We therefore affirm the court's ruling on this issue.

### V. Constructive Discharge.

█ Left remaining is the stand-alone common-law tort action of constructive discharge. There is no dispute that Hegeman is an at-will employee. We recently decided that an at-will employee's claim for constructive discharge, standing alone, is not an actionable tort. *See Balmer v. Hawkeye Steel*, 604 N.W.2d 639, 643 (Iowa 2000). Rather, there must be an accompanying claim that the discharge (1) was the result of illegal conduct, such as the violation of public policy or statutory law, or (2) constituted a breach of a unilateral contract of employment created through an employer's handbook or policy manual. *Id.* We have no such accompanying claim here.

We therefore conclude that the claim should have been rejected as a matter of law as the defendants had contended in the district court. We therefore reverse the district court decision holding otherwise and remand for an order sustaining the defendants' motion for summary judgment on this issue and dismissing Hegeman's petition.

**AFFIRMED ON APPEAL; REVERSED ON CROSS–APPEAL; REMANDED WITH DIRECTIONS.**